UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

FULVIO JOSEPH GENTILI,    )
      Plaintiff    )
        v.    )    CASE NO.
      )
COMMONWEALTH OF    )
MASSACHUSETTS    )
      Defendant.    )

## COMPLAINT FOR DECLARATORY JUDGMENT

## AND FOR FURTHER NECESSARY OR PROPER RELIEF

### JURISDICTION

1.     The Court has jurisdiction of this matter under the provisions of 28 U.S.C. §§ 1331, 2201, 2202, the Deprived of Property Without Due Process Clause of the 5th Amendment to the United States Constitution applicable to the states through the 14th Amendment, the Excessive Fines Clause of the 8th Amendment to the United States Constitution applicable to the states through the 14th Amendment, and Rule 57 of the Federal Rules of Civil Procedure.

### NATURE OF CASE OR CONTROVERSY

2.     An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201 as the Plaintiff seeks declaratory judgment pursuant to 28 U.S.C. § 2201 that the Commonwealth of Massachusetts has violated the Deprived of Property Without Due Process Clause of the 5th Amendment and the Excessive Fines Clause of the 8th Amendment by the ruling in Gentili v. Town of Sturbridge, 484 Mass. 1010 (2020). 28 U.S.C. § 2201 empowers this Court to "declare the rights and other legal relations of any interested party seeking such

declaration." The Plaintiff also seeks "further necessary or proper relief" pursuant to 28 U.S.C. § 2202 for damages caused by the aforesaid constitutional violations by the Commonwealth of Massachusetts which deny the two beneficiaries of said Renato Gentili Trust the protections of the Deprived of Property Without Due Process Clause of the 5th Amendment and the Excessive Fines Clause of the 8th Amendment, to which protections every citizen is entitled.[1]

PARTIES

3.      Plaintiff Fulvio Joseph Gentili ("Gentili") is a citizen of the United States residing in Fort Myers, Florida.  Gentili is an attorney who retired from the practice of law in 2017, was admitted to practice law in this District Court on June 2, 1975 and was admitted to practice law in Massachusetts in 1973, in New Hampshire in 1984 and in Florida in 2007.

4.      Gentili is one of two trustees of and one of two beneficiaries of the Renato Gentili Trust under the declaration of trust dated August 18, 1977 and recorded with Worcester (Southern) District Registry of Deeds in Book 9089, Page 297.  The other trustee and the other beneficiary is Gentili's sister, Gina Madore, who is a citizen of the United States residing in Southbridge, Massachusetts.

5.      Gentili has standing in this proceeding as an interested party within the meaning of Mass. General Laws chapter 190B,  §§ 1-201(24), 1-201(54) and as a trustee of an express trust pursuant to Rule 17(a)(1)(E) of the Federal Rules of Civil Procedure.

---

[1] "The Fourteenth Amendment provides that '[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States.' 'On its face, this appears to grant ... United States citizens a certain collection of rights—*i.e.* , privileges or immunities—attributable to that status.'" Timbs v. Indiana, 139 S. Ct. 682, 691, 203 L.Ed.2d 11 (2019) (Thomas, J. Concurring Opinion).

2

6.      The Defendant is the Commonwealth of Massachusetts, by and through the Supreme

Judicial Court, situated in Suffolk County ("the Commonwealth").

STATEMENT OF FACTS

7.      The Renato Gentili Trust ("Trust") is the record owner of the real property located at

209 Charlton Road, a/k/a U.S. Route 20, in Sturbridge, Worcester County, Massachusetts

("209 Charlton Road") pursuant to a Quitclaim Deed to Renato Gentili dated August 18, 1977,

recorded with Worcester (Southern) District Registry of Deeds in Book 6265, Page 258 and

pursuant to Worcester Probate No.83PR307038.  Renato Gentili died in 1983.  The ownership

of 209 Charlton Road by the Trust derives from a Quitclaim Deed to Renato Gentili and

Eufrasia Gentili, husband and wife, dated March 27, 1956 and recorded with said Registry of

Deeds in Book 3762, Page 201.

8.      In accordance with the terms of Mass. General Laws, chapter 183, § 11, said Quitclaim

Deeds dated March 27, 1956 and August 18, 1977 had "the force and effect of a deed in fee

simple" and "convey[ed] to the grantee a fee simple estate in the granted premises." Everett

Factories & Terminal Corp. v. Oldetyme Distillers Corp., 300 Mass. 499, 502 (1938).

9.      The land at 209 Charlton Road is commercially zoned property consisting of

approximately one acre, more or less, of vacant land at the intersection of U.S. Route 20, a

public way, and Hall Road, a public way.  The land at 209 Charlton Road has never been

improved and has frontage on both Charlton Road, also known as U.S. Route 20, and Hall

Road.  At page 3 of the Decision from the Land Court proceeding, Case No. 15 MISC. 00570

(MDV), Judge Vhay memorialized that "209 Charlton Road used to be part of a larger parcel

3

owned by Gentili family that extended west of 209 Charlton Road between Hall Road (on the south) and U.S. Route 20 (to the north). Various commercial establishments occupy the areas west of 209 Charlton Road. The closest one, immediately west of 209 Charlton Road, is a drive-through fast-food restaurant, Wendy's."

10.     In July 1997, the Trust filed a request for determination of the applicability of the Wetlands Protection Act to 209 Charlton Road with the Sturbridge Conversation Commission. The Commission determined there were no wetlands on 209 Charlton Road.  Six years later, the Trust's tenant filed a second request for determination in 2003.  At that time, the Commission determined that there were wetlands on 209 Charlton Road, noting that while there was no water on site in 1997, the intervening development in the surrounding area had impacted "the site and area hydrology."  The Commission's revised **wetlands determination substantially impacted the Trust's ability to sell** 209 Charlton Road.  In April 2009, the Trust entered into a $380,000 sales agreement with the Richmond Company which fell through, though the buyer's letter terminating the Agreement did not provide a reason for the termination.  In November 2009, the Trust retained Jalbert Engineering to prepare a site plan, which delineated an "area of man-made run off" on 209 Charlton Road which extends into the Commonwealth's right of way for Charlton Road/Route 20. In June 2013, the Trust entered into another sales agreement with Charter Foods North, LLC for $260,000.  That contract was terminated by mutual agreement.  In October 2015, the Trust received a $150,000 offer to

purchase from Michael and Katherine Poirier conditioned on the Town's approval of a drainage change plan which sale also failed.[2] (Emphasis added).

<u>PROCEDURAL HISTORY</u>

11.     In December of 2015, the Trust filed a Complaint against the Town of Sturbridge in the Land Court of the Commonwealth of Massachusetts seeking a declaration that the Town was wrongfully discharging water onto the Trust's land and seeking an injunction. The Town counterclaimed in May of 2017 seeking a declaration that the Town had "a prescriptive right of easement" for a culvert and discharge of water onto the Trust's land.

12.     A 3-day trial was held in December 2017, including a site view by Judge Vhay.  On January 10, 2018, Judge Vhay issued his Decision in Case No. 15 MISC. 00570 (MDV).  See accompanying copy. The Land Court entered Judgment (see accompanying copy) that adjudged in part that the "Town has obtained an easement by prescription, appurtenant to the Town's interests in Hall Road, to discharge onto and across the Trust Property, within the area labelled on Exhibit A as 'Area of Man-Made Runoff' (the 'Easement Area'), stormwater that is discharged through the New Town Culvert, during and after storm events."

13.     On May 14, 2018, the Trust filed a complaint in Worcester Superior Court, Civil Action No. 1885CV00721-A, against the Town of Sturbridge alleging a 5th Amendment claim for just and/or reasonable compensation.  At the time the Trust filed the aforesaid complaint in Superior Court, the exhaustion of state remedies rule of <u>Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City</u>, 473 U.S. 172 (1985) had not been abrogated

---

[2] The factual statements in paragraph 10 are set forth in District Judge Hillman's Order at pages 3-4.

by Knick v. Township of Scott, 588 U.S. __, 139 S. Ct. 2162 (2019).  Accordingly, the Trust was required to file and litigate its claim for 5th Amendment just and/or reasonable compensation in the Superior Court or otherwise its claim would be dismissed from this District Court as unripe due to the failure to exhaust state remedies as required by Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City .

14.     The Trust and the Town filed cross motions for summary judgment in the Superior Court action.  After a hearing on the motions held on February 14, 2019, the Superior Court issued its Memorandum and Order dated February 28, 2019 holding that the "easements by prescription as set forth by the Land Court decision do not constitute a taking" and "the Trust is not entitled to the relief[3] sought in Counts I, II and III of the complaint." See accompanying copy.

15.     The Superior Court ruled that it was "the Trust's failure to assert its property rights not any state action that caused the property rights to be lost, that is Sturbridge acquired its easement for drainage purposes due to the inaction of the Trust over a continuous, open and notorious period of twenty years.  That scenario and factual circumstance does not constitute a 'taking' that requires compensation."

16.     On March 4, 2019, Judgment entered for the Town dismissing the Trust's complaint.

17.     On March 18, 2019, the Trust filed its notice of appeal of the Superior Court Judgment.

_____

[3] Per footnote 1 of the Superior Court Memorandum and Order, "Count I is a claim for a taking … while Count II asserts a claim for recovery of attorney's fees expended by the Trust in the Land Court action and Count III is a claim for return of taxes paid, again, on a theory associated with Count I, that is, a taking by the (sic) Sturbridge…."

18.     On September 16, 2019, the Trust's appeal was transferred *sua sponte* to the Supreme Judicial Court of Massachusetts.

19.     On January 9, 2020, oral argument was held before the Supreme Judicial Court.

20.     On February 24, 2020, the Supreme Judicial Court issued its Rescript Opinion (484 Mass. 1010) affirming the Superior Court Judgment.  See accompanying copy. On April 21, 2020, the Supreme Judicial Court denied the Trust's Motion for Reconsideration.

21.     In its Rescript Opinion, the Supreme Judicial Court held that there is no taking as the Trust lost its rights upon the expiration of the twenty year prescriptive period: "The trust had no basis on which to claim a taking by the town because the town acquired the right to use the property (to discharge storm water onto it) via the prescriptive easement, and the trust lost its right to the property in that regard."  484 Mass. at 1012.

22.     The Supreme Judicial Court ended the Rescript Opinion by stating the following: "The Superior Court judge correctly concluded that the trust has not established a taking or any right to compensation or damages." 484 Mass. at 1012.  However, in its ruling, the Superior Court did not state that the trust had not established any right to damages, but only that the "scenario and factual circumstance does not constitute a 'taking' that requires compensation."

23.     On June 1, 2020, Gentili filed a complaint in this District Court, Case No. 4:20-CV-40062-TSH, against the Town of Sturbridge under 42 U.S.C. § 1983 alleging violation of the Due Compensation Clause of the 5th Amendment to the U. S. Constitution, applicable to the states under the 14th Amendment.

24.     After cross Motions for Summary Judgment were filed and a hearing held on January 29, 2021, the District Court (Hillman, D.J.) issued an Order on Cross Motions for Summary Judgment on August 10, 2021. See accompanying copy.

25.     In the Order, the District Court ruled that "Sturbridge's motion for summary judgment (Docket No. 16) is **_granted_** and Plaintiff's motion for summary judgment (Docket No. 17) is **_denied_**, as Plaintiff's Fifth Amendment Takings Clause claim is res judicata and barred by the *Rooker-Feldman* doctrine."

26.     In his Order at page 15, District Judge Hillman stated that "I cannot reconcile Plaintiff's argument that his Fifth Amendment claim was not 'actually decided' in the state courts with the SJC's extended discussion of the Supreme Court's *Texaco v. Short* decision."

27.     In his Order at page 16, District Judge Hillman further stated that "Plaintiff takes issue with the SJC's reliance on Texaco rather than the other federal constitutional precedent he cited and discussed at length in his SJC brief and summary judgment pleadings in this case. Per Plaintiff, 'Texaco v. Short should not now be used by this Court to circumvent constitutional standards by use of an inapplicable rationale, which rationale was expressly adopted by the Supreme Judicial Court . . .' …. Simply put, Plaintiff thinks that the SJC got it wrong, and urges this Court to take the extraordinary step of overruling the SJC's constitutional analysis.  Even if this Court agreed with Plaintiff's application of Texaco, it could not act."

28.     On August 13, 2021, Judgment for the Town of Sturbridge was entered.

CAUSE OF ACTION

COUNT I
**DECLARATORY JUDGMENT THAT THE COMMONWEALTH
VIOLATED THE DEPRIVED OF PROPERTY WITHOUT DUE PROCESS
CLAUSE OF THE FIFTH AMENDMENT AND THE EXCESSIVE FINES
CLAUSE OF THE EIGHTH AMENDMENT**

Violation of the Deprived of Property Without Due Process Clause of the 5th Amendment

29.     Gentili seeks declaratory judgment that the Commonwealth violated the Deprived of Property Without Due Process Clause of the 5th Amendment by the decision in Gentili v. Town of Sturbridge, 484 Mass. 1010 (2020).

30.     The Commonwealth relied on Texaco, Inc. v. Short, 454 U.S. 516 (1982) as the sole federal constitutional authority for its decision:  "It is this failure, rather than any action by the town, that led to the trust's loss of property rights. See Texaco, Inc. v. Short, 454 U.S. 516, 530 (1982) ('It is the owner's failure to make any use of the property -- and not the action of the State -- that causes the lapse of the property right; there is no 'taking' that requires compensation')."  484 Mass. at 1011-1012.

31.     The Commonwealth determined that the "Superior Court judge correctly concluded that the trust has not established a taking or any right to compensation or damages."  484 Mass. at 1012.

32.     The Commonwealth opined that "[t]he trust had no basis on which to claim a taking by the town because the town acquired the right to use the property (to discharge storm water onto it) via the prescriptive easement, and the trust lost its right to the property in that regard."  In so holding, the Commonwealth established that the trust "lost its right to the property". 484 Mass, at 1012.

33.     In its decision, the Commonwealth quoted only the last sentence of the dispositive holding of the Supreme Court opinion in Texaco, Inc. v. Short.  The entire passage that was truncated in Gentili v. Town of Sturbridge is as follows:

> In ruling that private property may be **deemed to be abandoned** and to lapse upon the failure of its owner to take **reasonable actions imposed by law**, this Court has **never required the State to compensate the owner for the consequences of his own neglect.** We have concluded that the State may treat a mineral interest that has not been used for 20 years and for which no statement of claim has been filed as abandoned; **it follows that, after abandonment, the former owner retains no interest for which he may claim compensation.** It is the owner's failure to make any use of the property—and not the action of the State—that causes the lapse of the property right; there is no "taking" that requires compensation.  (Emphasis added).

Texaco, Inc. v. Short, 454 U.S. at 530.

34.     Pursuant to foregoing holding from Texaco, Inc. v. Short, 1) private property may be deemed to be abandoned, 2) upon the failure of its owner to take reasonable actions imposed by law, and 3) the Supreme Court has never required the State to compensate the owner 4) for the consequences of his own neglect, as 5) after abandonment, the former owner retains no interest for which he may claim compensation. 454 U.S. at 530.

35.     In Texaco, Inc. v. Short, the Supreme Court summarized that "the State may treat a mineral interest that has not been used for 20 years and for which no statement of claim has been filed as abandoned; it follows that, after abandonment, the former owner retains no interest for which he may claim compensation." 454 U.S. at 530.

36.     Following Texaco, Inc. v. Short, the Supreme Court decided United States v. Locke, 471 U.S. 84, 104 (1985) dealing with mineral claims on federal land ("Under Texaco, we must first address the question of affirmative legislative power: whether Congress is authorized to

'provide that property rights of this character shall be extinguished if their owners do not take the affirmative action required by the' statute.").

37.     Texaco, Inc. v. Short and United States v. Locke deal with mineral rights under state or federal legislation which condition retention of rights on performance of statutorily required actions.  United States v. Locke, 471 U.S. at 103 ("… whether automatic forfeiture of a claim for failure to make annual filings is constitutionally permissible. The framework for analysis of this question, in both its substantive and procedural dimensions, is set forth by our recent decision in Texaco, Inc. v. Short…."). The Supreme Court opined that "actions required by the State to avoid an abandonment of a mineral estate furthers a legitimate state goal. Certainly the State may encourage owners of mineral interests to develop the potential of those interests; similarly, the fiscal interest in collecting property taxes is manifest. ... The State surely has the power to condition the ownership of property on compliance with conditions that impose such a slight burden on the owner while providing such clear benefits to the State." Texaco, Inc. v. Short, 454 U.S. at 529-530.

38.     Notwithstanding that Texaco, Inc. v. Short is an exercise of a state's police power[4] over mineral rights, the Commonwealth applies the Texaco, Inc. v. Short rationale to the land owned in fee simple by the Trust: "Although the Court in the Texaco case was considering a State statute that provided for the extinction of certain rights (in mineral interests) when not exercised for twenty years, see id. at 518, rather than, as  here, a State statute that establishes certain rights (via an easement), the rationale applies equally." 484 Mass. at 1012.

---

[4] 454 U.S. at 524.

11

39.     The Massachusetts statute relied upon by the Commonwealth in its Rescript Opinion is Mass. General Laws, Chapter 187, § 2:  "No person shall acquire by adverse use or enjoyment a right or privilege of way or other easement from, in, upon or over the land of another, unless such use or enjoyment is continued uninterruptedly for twenty years."

40.     Chapter 187, § 2 provides for acquisition of an easement over servient[5] land but does not state that the owner of the servient land loses, abandons or forfeits its property interest if the owner fails to act.

41.     Chapter 187, § 2 does not require any statutorily imposed act from the owner of the servient land in direct contrast to the act statutorily required from the owners of mineral rights in Texaco, Inc. v. Short, 454 U.S. at 518, n.3 (""Any interest in coal, oil and gas, and other minerals, shall, if unused for a period of 20 years, be extinguished, unless a statement of claim is filed in accordance with section five hereof….") and United States v. Locke, 471 U.S. at 94 ("The owner of an unpatented mining claim located on Federal lands . . . shall have filed or caused to have been filed *on or before December 30* (sic) of each calendar year . . . evidence of annual assessment work performed during the previous assessment year or a notice of intention to hold the mining claim.").

42.     Despite the absence of a statutory requirement imposed upon the owner by the Massachusetts legislature, the Commonwealth held that the Trust's property rights in 209 Charlton Road have been lost: "It is this failure, rather than any action by the town, that led to

---

[5] "A servient estate is an estate burdened by an easement." M.P.M. Builders, LLC v. Dwyer, 442 Mass. 87, 88, n. 2 (2004).

the trust's loss of property rights. See Texaco, Inc. v. Short …." 484 Mass. at 1011.  Moreover, the Commonwealth concluded that the Trust "has not established … any right to … damages." 484 Mass. at 1012.

43.     The Commonwealth, by fiat, decreed the Trust lost its property rights and had no right to damages even though it retained the fee simple title to 209 Charlton Road.  In the trial court ruling that preceded the Rescript Opinion, the Superior Court did not state that the trust had no right to damages, only that the "scenario and factual circumstance does not constitute a 'taking' that requires compensation."  Moreover, as stated in footnote 1 of the Superior Court Memorandum and Order, the Trust sought relief based on a taking, not on a claim for damages.

44.     The mineral rights that were lost by the Texaco and Locke owners were conditioned upon actions statutorily required by legislation. Texaco, Inc. v. Short, 454 U.S. at 526 ("Through its Dormant Mineral Interests Act, however, the State has declared that this property interest is of less than absolute duration; retention is conditioned on the performance of at least one of the actions required by the Act.")[6]; United States v. Locke, 471 U.S. at 104 ("…we have recognized that these interest are a 'unique form of property'. (citation omitted) The United States, as owner of the underlying fee title to the public domain, maintains broad powers over the terms and conditions upon which public lands can be used, leased and acquired.").

45.     In Hodel v. Irving, 481 U.S. 704, 730 (1987), the Supreme Court recognized that "[l]egislatures can enact substantive rules of law that treat property as forfeited under

---

[6] Per the Indiana Supreme Court: "Interests or estates in oil, gas, coal and other minerals lying beneath the surface of the land are interests in real estate for our purposes here, and as such are entitled beyond question to the firmest protection of the Constitution from irrational state action. **They are vested property interests separate and distinct from the surface ownership**." 454 U. S. at 519, n.5. (Emphasis added).

conditions that the common law would not consider sufficient to indicate abandonment" citing to United States v. Locke, 471 U.S. at 106, n.15.   Thus, the loss of mineral rights in Texaco, Inc. v. Short, and United States v. Locke was held to be constitutional since the owners of the mineral rights failed to perform actions statutorily required by legislation.   Texaco, Inc. v. Short, 454 U.S. at 529 ("…as a result of the failure of the property owner to perform the statutory condition, an interest in fee was deemed as a matter of law to be abandoned and to lapse.").

46.   In contrast, the Commonwealth decreed that the Trust lost its property rights despite the absence of legislative authority mandating that the owner of the servient estate, the Trust, perform a specified act.   There is no Massachusetts statute that provides that one's real property rights will be lost due to inaction.

47.   Neither the abandoned property law, Mass. General Laws, Chapter 200A, nor Mass. General Laws, Chapter 183, § 3, sets forth that an owner's rights in real property are automatically lost or deemed abandoned or forfeited by the lapse of the twenty year prescriptive period prescribed by Chapter 187, § 2.

48.   However, a specific Massachusetts statute provides a right to damages even when there is no taking, but the Commonwealth did not address this statute in rendering the decision in Gentili v. Town of Sturbridge, 484 Mass. 1010 (2020).   See Note 7: "Because we conclude that no taking occurred, we need not address … damages…." 484 Mass. at 1012.

49..   Mass. General Laws, Chapter 79, § 12 prescribes the following: "In determining the damages to a parcel of land injured when **no part of it has been taken**, regard shall be had only to such injury as is special and peculiar to such parcel…." (Emphasis added).

14

50.     The constitutional protections for property that the 5th Amendment provides are not mutually exclusive: the 5th Amendment prohibits the government from depriving one of property without due process **or** from taking one's property for public use without compensation. Hippolite Filhiol v. Charles Maurice, 185 U.S. 108, 111 (1902) ("The 5th Amendment prohibits the exercise of Federal power to deprive any person of property without due process of law, or to take private property for public use without just compensation;...").

51.     The Commonwealth violated the Deprived of Property Without Due Process Clause of the 5th Amendment by decreeing that the Trust had no right to damages in light of the above quoted provision from Mass. General Laws, Chapter 79, § 12.

52.     In challenging state action under the Deprived of Property Without Due Process Clause of the 5th Amendment, the inquiry is "whether the State has deprived the claimant of a protected property interest, and whether the State's procedures comport with due process." Lujan v. G&G Fire Sprinklers, Inc., 532 U.S. 189, 195 (2001).  In Lujan, the Supreme Court opined that the Due Process Clause "grants the aggrieved party the opportunity to present his case and have its merits fairly judged." Id., citing Logan v. Zimmerman Brush Company, 455 U.S. 422, 433 (1982).

53.     In this case, the Commonwealth decreed that the Trust had no right to damages.  No such ruling was made by the Superior Court, however, as the issue before the Superior Court

was whether the prescriptive easement of the Town of Sturbridge was a taking under the Takings Clause of the 5th Amendment.[7]

54.     Under principles enunciated in Lujan v. G&G Fire Sprinklers, if a claimant has a protected property interest, a State's procedures must comport with due process. 532 U.S. at 195.   Although there was no taking of any part of 209 Charlton Road, the Trust had a statutory right to damages as established by Chapter 79, § 12.   Despite this statutory right, the Commonwealth decreed the Trust had no right to damages.

55.     The Commonwealth's ruling that the Trust had no right to damages violated the Deprived of Property Without Due Process Clause of the 5th Amendment as it deprived the Trust of a property interest, *i.e.,* the opportunity to present its case and have its right to damages fairly judged on the merits. Logan v. Zimmerman Brush Company, 455 U.S. at 433.

56.     In Massachusetts, it is established that an owner "may recover for damages to property that is not actually taken, if it can show it suffered 'special and peculiar' injury under G. L. c. 79." Town of Burlington v. Town of Bedford, 417 Mass. 161, 165 (1994).   Special and peculiar injuries are "unique injuries that differ from those 'of the general public.' Tassinari v. Massachusetts Turnpike Auth., 347 Mass. 222, 225 (1964)." Id. at 166.   Furthermore, special and peculiar injuries are "characterized as 'palpable' and 'direct,' rather than 'remote and consequential.' Wine v. Commonwealth, 301 Mass. 451, 458 (1938). Malone v. Commonwealth, 378 Mass. 74, 79 (1979)."   Id.at 166.

---

[7] Just Compensation under the Takings Clause of the 5th Amendment is not sought herein due to the SJC holding that  there was no taking.

57.     Judged by the foregoing standards summarized in <u>Town of Burlington v. Town of Bedford</u>, the Trust has been unconstitutionally deprived of the right to damages under Chapter 79, § 12 for the "special and peculiar" injury to 209 Charlton Road.

58.     As stated in <u>Town of Burlington v. Town of Bedford</u>, 417 Mass. at 167, "[i]t is well-settled that 'any impairment or deprivation of access which an owner formerly had to a public way may so affect the value of the remainder of the land not taken as to be compensable in damages to be recovered under c. 79, § 12.'"  For example, in <u>Malone v. Commonwealth</u>, 378 Mass. 74, 80 (1979), it was set forth that "compensable injury has been found where 'barricades ... [shut] off access to the petitioner's premises from the general system of the public highways of the city.' Wine v. Commonwealth, 301 Mass. 451, 458 (1938)."

59.     The Commonwealth clearly recognizes that "'[a]ccess to a public way is one of the incidents of ownership of land…' (Anzalone v. Metropolitan Dist. Comm'n, 257 Mass. 32, 36 [1926])."  <u>Malone v. Commonwealth</u>, 378 Mass. at 78.   Thus, "impairment of access … if substantial may figure as special and peculiar injury deserving compensation…." <u>Id.</u>

60.     However, it is clear that in order to be special and peculiar, the damage cannot be the same as that of the general public.  <u>Malone v. Commonwealth</u>, 378 Mass. at 79 ("the damage 'is not special and peculiar, but ... the same in kind as that of the general public, although it may be relatively great in degree.'").

61.     The Commonwealth holds that for Chapter 79 special and peculiar injury, "the problem in each case consists of assessing a variety of factors…"  <u>Malone v. Commonwealth</u>, 378 Mass. at 80.

62.     In this vein, the Supreme Court has recognized that "property is more than economic value, (citations omitted)… [as] it also consists of 'the group of rights which the so-called owner exercises in his dominion of the physical thing,' such 'as the right to possess, use and dispose of it' (citation omitted)." Phillips v. Washington Legal Foundation, 524 U.S. 156, 170 (1998).

63.     "The constitutional provision [of the 5th Amendment] is addressed to every sort of interest the citizen may possess.... [and] may comprise the group of rights for which the shorthand term is 'a fee simple'…." United States v. General Motors Corp., 323 U.S. 373, 378 (1945).

64.     In the instant proceeding matter, the Trust's ownership derives from the aforesaid Quitclaim Deeds dated March 27, 1956 and August 18, 1977 which "convey[ed] … a fee simple estate in the granted premises." Everett Factories & Terminal Corp. v. Oldetyme Distillers Corp., 300 Mass. at 502.

65.     As record owner of 209 Charlton Road, the Trust's ownership of the land is injured by a prescriptive easement recorded at said Registry of Deeds in Book 59223, Page 336 that prevents commercialization or development of the vacant land.

66.     As set forth in District Judge Hillman's Order at pages 3-5, the land at 209 Charlton Road has been injured by the stormwater discharge via the prescriptive easement: "wetlands determination substantially impacted the Trust's ability to sell 209 Charlton Road."   The water re-emerged in 2003, when the Trust's tenant filed a second request for determination. Thereafter, multiple attempts to develop and commercialize the vacant land have failed.  First, the tenant was not able to develop the land.  Second, in April 2009, the Trust entered into a

$380,000 sales agreement with the Richmond Company which fell through, though the buyer's letter terminating the Agreement did not provide a reason for the termination. Third, in November 2009, the Trust retained Jalbert Engineering to prepare a site plan, which delineated an "area of man-made run off" on 209 Charlton Road which extends into the Commonwealth's right of way for Charlton Road/Route 20. This site plan was used by the Town of Sturbridge in wetlands Order of Conditions[8] issued in 2010 and recorded at said Registry of Deeds at Book 46196, Page 267.  Fourth, in June 2013, the Trust entered into another sales agreement with Charter Foods North, LLC for $260,000.  That contract was terminated by mutual agreement. Fifth, in October 2015, the Trust received a $150,000 offer to purchase from Michael and Katherine Poirier conditioned on the Town's approval of a drainage change plan which sale also failed.  Sixth, in August of 2015, an attorney for the Trust met with the Sturbridge Board of Selectmen and "inquired whether the Town would consider rerouting the discharge to a nearby drainage ditch" in the Commonwealth's right-of-way for Charlton Road/Rte 20.  The Town declined. [9]

67.     Paraphrasing the Supreme Court, "even though the [Trust as] owner may retain the bare legal right to dispose of the [land at 209 Charlton Road] … by transfer or sale, the permanent occupation of that [land] … by a stranger [the Town of Sturbridge] will ordinarily empty the right of any value, since the purchaser will also be unable to make any use of the property." Loretto v. Teleprompter Manhattan Catv Corp, 458 U.S. 419, 436 (1982).

---

[8] Pursuant to Mass. General Laws, chapter 131, § 40.
[9] The factual statements in paragraph 66 are set forth in District Judge Hillman's Order at pages 3-5.

68.     The Commonwealth has "recognize[d] that the trust did take various actions related to the property between 1997 and 2015 when it filed its declaratory judgment action in the Land Court, but none of those actions -- inquiring about wetlands, leasing the property, attempting to sell the property -- related to stopping the town's discharge of water onto the property or claiming a taking on that basis."  Gentili v. Town of Sturbridge, 484 Mass. at 1011, n. 6.

69.      In his Order at pages 3-5, District Judge Hillman set forth summary judgment evidence about the Trust's unsuccessful attempts to develop 209 Charlton Road over the last twenty years, by first leasing the land and then by offering the land for sale, and the fact that the Trust received three offers from third parties to purchase 209 Charlton Road: $380,000 was offered in 2009, $260,000 was offered in 2013 and $150,000 was offered in 2015.  None was consummated.

70.     Most of the reported cases on special and peculiar injury deal with damage claims arising from impaired access to the property, irrespective whether damages were awarded or not.  None deals with the scenario found in the instant proceeding, *i.e.* the injury flows directly from a prescriptive easement so that the owner is "unable to make any use of the property." Loretto v. Teleprompter Manhattan CATV Corp, 458 U.S. at 436.

71.     Furthermore, no other land in Sturbridge, Massachusetts is subject to the Town's prescriptive easement that is used to discharge stormwater onto 209 Charlton Road to prevent erosion of Hall Road, a public way.  Thus, the damage is **not** the same in kind as that of the general public.  Malone v. Commonwealth, 378 Mass. at 79.  See also Webster Thomas Co. v. Commonwealth, 336 Mass. 130, 138 (1957) ("We think that the injury here was 'special and peculiar' within the meaning of this section. The injuries to the petitioners' buildings were

20

confined only to their property and cannot be said to be common to the vicinage or of a general and public nature.").

72.     The legal "scenario and factual circumstance" thus may be summarized as follows:

First, "[a]ccess to a public way is one of the incidents of ownership of land…' [and] impairment of access … if substantial may figure as special and peculiar injury deserving compensation…." Malone v. Commonwealth, 378 Mass. at 78;

Second, "property … consists of 'the group of rights which the so-called owner exercises in his dominion of the physical thing,' such 'as the right to possess, use and dispose of it.'" Phillips v. Washington Legal Foundation, 524 U.S. at 170;

Third, the 5th Amendment addresses interests that "comprise the group of rights for which the shorthand term is 'a fee simple'…." United States v. General Motors Corp., 323 U.S. at 378;

Fourth, the Trust's fee simple estate in 209 Charlton Road derives from Quitclaim Deeds dated March 27, 1956 and August 18, 1977 which had "the force and effect of a deed in fee simple" and "convey[ed] to the [Trust as] grantee a fee simple estate in the granted premises." Everett Factories & Terminal Corp. v. Oldetyme Distillers Corp., 300 Mass. at 502;

Fifth, although the Trust has the legal fee simple right to dispose of 209 Charlton Road, the permanent occupation by the Town of Sturbridge via a prescriptive easement "will ordinarily empty the right of any value, since the purchaser will also be unable to make any use of the property." Loretto v. Teleprompter Manhattan Catv Corp, 458 U.S. at 436;

Sixth, the prescriptive easement wetlands "substantially impacted the Trust's ability to sell" 209 Charlton Road as demonstrated by three unsuccessful attempts to sell from 2008 to 2015. District Judge Hillman's Order at pages 3-4;

Seventh, substantial impairment of access to an owner's property "may figure as special and peculiar injury deserving compensation…." Malone v. Commonwealth, 378 Mass. at 78; and Eighth, no reported case deals with this proceeding's demonstrated special and peculiar injury flowing directly from a prescriptive easement so that the Trust is "unable to make any use of the property." Loretto v. Teleprompter Manhattan CATV Corp, 458 U.S. at 436.

73.     In light of the foregoing, the Trust has been unconstitutionally denied the right to seek damages for the "special and peculiar" injury to 209 Charlton Road as authorized by Mass. General Law, Chapter 79, § 12 due to the Commonwealth's decision "that the trust has not established … any right to … damages." 484 Mass. 1012.  The Superior Court's Memorandum and Order establishes that a claim by the Trust for damages for "special and peculiar" injury to 209 Charlton Road was not before the Superior Court and was not litigated. Despite this undisputable fact, the Commonwealth has decreed by fiat, and not by any measure of due process, that the Trust and thus its beneficiaries have no right to damages.

74.     The Commonwealth's decree is a violation of the Deprived of Property Without Due Process Clause of the 5th Amendment as the Trust has a fee simple estate in 209 Charlton Road which term (fee simple) comprises the group of rights that a citizen possesses. United States v. General Motors Corp., 323 U.S. at 378.  One of these rights is a property right pursuant to Chapter 79, § 12 to seek damages for "special and peculiar" injury to the Trust's land even though there was no taking.  Webster Thomas Co. v. Commonwealth, 336 Mass. at 138 ("Chapter 79, § 12, provides that where there has been an injury without a taking damages for only such injury as is 'special and peculiar' to an owner's land may be awarded. Nichols v. Commonwealth, 331 Mass. 581, 584, 121 N.E.2d 56.").  As the Trust (and its beneficiaries) is

22

"unable to make any use of the property" at 209 Charlton Road, the right to seek and obtain an award of damages for "special and peculiar" injury to that land is constitutionally warranted. Loretto v. Teleprompter Manhattan Catv Corp, 458 U.S. at 436.

Violation of the Excessive Fines Clause of the 8th Amendment

75.     Gentili seeks declaratory judgment that the Commonwealth violated the Excessive Fines Clause of the 8th Amendment by the decision in Gentili v. Town of Sturbridge, 484 Mass. 1010 (2020) decreeing that the Trust lost its property rights.

76.     In establishing that protection of the Excessive Fines Clause of the 8th Amendment is applicable to the states through the 14th Amendment, the Supreme Court held that "[p]rotection against excessive punitive economic sanctions secured by the Clause is … both 'fundamental to our scheme of ordered liberty' and 'deeply rooted in this Nation's history and tradition.'" Timbs v. Indiana, 586 U.S. ____, 139 S. Ct. 682, 689 (2019).[10]

77.     In Austin v. United States, 509 U.S. 602, 622 (1993), the Supreme Court concluded that "that forfeiture … constitutes 'payment to a sovereign as punishment for some offense,' (citation omitted) and, as such, is subject to the limitations of the Eighth Amendment's Excessive Fines Clause."  In Austin, the Supreme Court also noted that "… recent cases have expressly reserved the question whether the [guilty-property] fiction could be employed to forfeit the property of a truly innocent owner. See, *e. g., Goldsmith-Grant Co.,* 254 U. S., at 512; *Calero-Toledo,* 416 U. S., at 689-690 (noting that forfeiture of a truly innocent owner's property would raise 'serious constitutional questions.')."  Id. at 617.

---

[10] The Supreme Court opinion in Timbs v. Indiana was issued on February 20, 2019.

78.     In sum, the Supreme Court has established that an interest in fee can be deemed abandoned or forfeited upon failure of property owner to perform statutory conditions per Texaco, Inc. v. Short, 454 U.S. at 529; "[l]egislatures can enact substantive rules of law that treat property as forfeited" although not sufficient for abandonment under the common law per Hodel v. Irving, 481 U.S. at 730; and forfeiture of property is subject to the limitations of the Eighth Amendment's Excessive Fines Clause per Austin v. United States, 509 U.S. at 622, which clause is applicable to the states under the 14th Amendment per Timbs v. Indiana, 586 U.S. ____, 139 S. Ct. 682 (2019).

79.     While legislatures can enact "substantive rules of law that treat property as forfeited" (Hodel v. Irving, 481 U.S. at 730) upon failure of property owner to perform statutorily imposed condition, no such condition was imposed upon the Trust by Massachusetts legislation.  Nonetheless, the Commonwealth decreed that the Trust's failure "led to the trust's loss of property rights. See Texaco, Inc. v. Short …." 484 Mass. at 1011.

80.     There was no wrongful act by the Trust at any time that compelled the Commonwealth to hold that it "led to the trust's loss of property rights."  The fact is that the Trust did nothing wrongful by doing some act that was prohibited by legislation and did nothing wrongful by failing to do an act that was compelled by legislation.  The Trust did not object during the twenty year prescriptive period and nothing else.  By not objecting, the Trust not only suffered a prescriptive easement but also suffered forfeiture of the valuable property right to damages for "special and peculiar" injury to its fee simple estate at 209 Charlton Road.  A tenet of Massachusetts law is that "[p]ublic safety requires the drainage of surface waters from highways." Triangle Center, Inc. v. Department of Public Works, 386 Mass. 858, 864 (1982).

24

By not objecting, the Trust benefited the public as the stormwater discharge onto 209 Charlton Road prevents the erosion and undermining of Hall Road. (Land Court Decision, p. 4, ¶ 10). But, the Trust is burdened with the complete cost of this public safety measure contrary to the established principle of <u>Armstrong v. United States</u>, 364 U.S. 40,49 (1960) that "public burdens …, in all fairness and justice, should be borne by the public as a whole."

81.     Land Court Judge Vhay memorialized that "[v]arious commercial establishments occupy the areas west of 209 Charlton Road."   Moreover, the land at 209 Charlton Road has in the past been the subject of purchase offers from three different third parties which offers ranged from a high of $380,000 to a low of $150,000.   Accordingly, it is reasonable that the Trust's land at 209 Charlton Road has substantial development and commercial value with its frontage on U.S. Route 20.

82.     The "trust's loss of property rights" pursuant to the Commonwealth's decree (484 Mass. at 1011) violates the 8th Amendment's Excessive Fines Clause since it is an excessive punitive economic sanction. Relying on <u>Texaco, Inc. v. Short</u> (454 U.S. at 530) that "after abandonment, the former owner retains no interest", the Commonwealth adopts the rationale that the Trust lost (or abandoned or forfeited) its interest in the property right to damages for "special and peculiar" injury to its fee simple estate at 209 Charlton Road. 484 Mass. at 1012. The words "loss" or "lost" or "abandoned" or "forfeited" are secondary to the concept that the Commonwealth in effect penalizes the Trust for not objecting during the prescriptive period by eliminating the Trust's property right to damages for "special and peculiar" injury to its land.

83.     The Supreme Court has held that "[p]rotection against excessive punitive economic sanctions" is secured by the 8th Amendment's Excessive Fines Clause. <u>Timbs v. Indiana</u>, 139 S.

25

Ct. at 689.   Nonetheless, the Commonwealth unconstitutionally holds that the Trust has no right to damages for "special and peculiar" injury to its fee simple estate in 209 Charlton Road as it lost/abandoned/forfeited the right by not objecting during the prescriptive period. As Justice Kennedy opined while concurring in <u>Austin v. United States</u>, 509 U.S. at 629, that "[a]t some point, we may have to confront the constitutional question whether forfeiture is permitted when the owner has committed no wrong of any sort, intentional or negligent. That for me would raise a serious question." That time is now as the Trust "committed no wrong of any sort, intentional or negligent."

84.    The Trust's failure to object during the prescriptive period was not wrongful as the Trust did not violate any law, regulation or code of conduct by not objecting.  Moreover, the Trust's failure to object is not related in any way to the statutory right to damages for "special and peculiar" injury to its fee simple estate in the land.   But, the Commonwealth has unconstitutionally tied the Trust's failure to object to this statutory right. 484 Mass. at 1011-1012 ("It is this failure, rather than any action by the town, that led to the trust's loss of property rights.").

85.    The Commonwealth exacts an excessive punitive economic sanction violating the 8th Amendment's Excessive Fines Clause by penalizing the Trust through the total loss, abandonment or forfeiture of the Trust's statutory right to damages for "special and peculiar" injury to its fee simple estate in the land.  Although the Trust did nothing wrongful, the Trust loses its right to seek damages for "special and peculiar" injury to land that should have substantial value for development and commercialization but for the stormwater discharge.

Request for Declaration

86.     Pursuant to 28 U.S.C. § 2201, "[i]n a case of actual controversy within its jurisdiction, …[this Court], upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.   Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

87.     Gentili has standing to seek a declaration in this proceeding as he is an interested party within the meaning of Mass. General Laws chapter 190B, § 1-201(24) ("'Interested person' includes … … beneficiaries … having a property right in or claims against a trust estate") and § 1-201(54) ("'Trust', includes an express trust, private or charitable … wherever and however created.") and to bring suit in his own name as a trustee of an express trust, the Renato Gentili Trust. Fed.R.Civ.P. 17(a)(1)(E).

88.     The instant complaint is "an appropriate pleading" for a declaration as its evidentiary and substantive allegations are based upon findings of fact by and legal conclusions from courts of competent jurisdiction set forth in the five accompanying court documents which are susceptible to judicial notice by this Court.   Giragosian v. Ryan, 547 F.3d 59, 66 (1st Cir. 2008)("Matters of public record ordinarily include 'documents from prior state court adjudications.'" ); United States ex rel. Winkelman v. CVS Caremark Corp., 827 F.3d 201, 208 (1st Cir. 2016) ("a court may consider matters of public record and facts susceptible to judicial notice.").

89.     It is indisputable that this proceeding is "a case of actual controversy" as the Commonwealth has held that the Trust (and thus its beneficiaries, including Gentili) has no

27

right to damages for "special and peculiar" injury to 209 Charlton Road and lost its property interest by not objecting during the twenty year prescriptive period, which decision is contested by this pleading.  Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941) ("Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.").

90.     In regard to declaratory judgment actions, the Supreme Court's "decisions have required that the dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" (citations omitted) Medimmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007).  It is indisputable that the instant proceeding is definite and concrete, touching the legal relations of the parties having adverse legal interests, and is real and substantial, warranting the issuance of a declaratory judgment. Id.; Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. at 273.  The five accompanying judicial Orders and Judgment establish unequivocally and unambiguously the dispute in terms of the facts and the law that warrant specific relief through a decree by this Court.

91.     Accordingly, it is respectfully submitted that this Court exercise its discretion to declare the rights and legal relations of Gentili by declaring that the Commonwealth violated the Deprived of Property Without Due Process Clause of the 5th Amendment to the United States Constitution and the Excessive Fines Clause of the 8th Amendment to the United States Constitution with the decision in Gentili v. Town of Sturbridge, 484 Mass. 1010 (2020).  The

Commonwealth's violations deny the two beneficiaries of the Renato Gentili Trust, as citizens of the United States, the protections of the Deprived of Property Without Due Process Clause of the 5th Amendment and the Excessive Fines Clause of the 8th Amendment and warrant damages for "special and peculiar" injury to land when no part of it has been taken.

WHEREFORE, Gentili requests this Court enter a Declaratory Judgment that:

1. The Commonwealth violated the Deprived of Property Without Due Process Clause of the 5th Amendment to the United States Constitution by the decision in Gentili v. Town of Sturbridge, 484 Mass. 1010, 1012 (2020) that the Renato Gentili Trust has not established any right to damages;

2. The Commonwealth violated the Excessive Fines Clause of the 8th Amendment to the United States Constitution by the decision in Gentili v. Town of Sturbridge, 484 Mass. 1010 (2020) decreeing that the Renato Gentili Trust lost its property rights;

3. The Renato Gentili Trust has a property right pursuant to Massachusetts General Laws, Chapter 79, § 12 to seek damages for "special and peculiar" injury to the Trust's land even though there was no taking; and

4. The Commonwealth's violations warrant damages for "special and peculiar" injury to land when no part of it has been taken.

## COUNT II
### FURTHER NECESSARY OR PROPER RELIEF BASED ON DECLARATORY JUDGMENT

92.     28 U.S.C. § 2202 empowers this Court to grant "[f]urther necessary or proper relief based on a declaratory judgment … after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

93.     The grant of power contained in 28 U.S.C. § 2202 "is broad enough to vest [this] court with jurisdiction to award damages where it is necessary or proper to effectuate relief based upon the declaratory judgment rendered …." (citations omitted) Security Insurance Company of New Haven v. White, 236 F.2d 215, 220 (10th Cir. 1956).  See also Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd., 41 F.3d 764, 773 (1st Cir. 1994) ("Section 2202 gives effect to the cumulative nature of the declaratory device by authorizing a district court to grant additional relief consistent with the underlying declaration.").  Accordingly, it is established that "final judgment should grant the relief to which each party is entitled" excepting default final judgments. Fed.R.Civ.P. 54(c).

94.     However, "[i]n deciding whether to award damages or require the parties to engage in further litigation[,] the determinative factor [for the court] is which solution will result in the most expeditious and just conclusion of the controversy." (citation omitted) Beacon Const. Co., Inc. v. Matco Elec. Co., Inc., 521 F.2d 392, 399-400 (2nd Cir. 1975).

95.     It is respectfully submitted that "the most expeditious and just conclusion" of this proceeding is an award of damages for "special and peculiar" injury "consistent with the underlying declaration."

96.     In order to achieve "the most expeditious and just conclusion" of this proceeding, it is submitted that the Court should order and hold a hearing on damages for "special and peculiar" injury to 209 Charlton Road since there was no taking.  If the Court should require the other trustee and beneficiary, Gina Madore, to appear in such proceeding, the undersigned represents that she will appear.

97.     A hearing in this Court is not only "the most expeditious" but also the only way to secure an equitable and "just conclusion."  Mass. General Laws Chapter 79, § 14 prescribes that jurisdiction for an assessment of damages is in the Worcester Superior Court as the county in which the land at 209 Charlton Road is situated.  In a proceeding in Worcester Superior Court for damages for "special and peculiar" injury to the land at 209 Charlton Road, the Commonwealth's Rescript Opinion would be controlling and bar such proceeding due to the holding that the Trust "has not established … any right to … damages." 484 Mass. at 1012.

98.     The "underlying declaration" in this proceeding in sum should declare that the Commonwealth has unconstitutionally deprived the Renato Gentili Trust and thus its two beneficiaries of statutory damages for "special and peculiar" injury to the Trust's land at 209 Charlton Road even though there was no taking.  Accordingly, the "relief consistent with the underlying declaration"[11] can only be granted by this Court due to the Rescript Opinion.

99.     Moreover, "relief consistent with the underlying declaration" can be ordered "against any adverse party whose rights have been determined by such judgment." 28 U.S.C. Sec. 2202. In this proceeding, this Court should declare that the Commonwealth, the adverse party, has unconstitutionally deprived the Renato Gentili Trust and thus its two beneficiaries of statutory damages for "special and peculiar" for injury to the Trust's land.  Thus, this Court is

---

[11] Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd., 41 F.3d at 773

empowered to grant against the Commonwealth damages for "special and peculiar" injury to 209 Charlton Road, damages that the Commonwealth denies by its unconstitutional holdings.

100.    As stated in Town of Burlington v. Town of Bedford, 417 Mass. at 167, "[i]t is well-settled that 'any impairment or deprivation … may so affect the value of the remainder of the land not taken as to be compensable in damages to be recovered under c. 79, § 12."'   Thus, it is reasonable that damages for "special and peculiar" injury consider the land's value as an element of those damages.   See also Wine v. Commonwealth, 301 Mass. 451, 458 (Mass. 1938) ("it follows that the case should have been submitted to the jury for determination of the damage, if any, thus sustained by the petitioner, not by loss of business as business, but by any diminution in the value of the real estate involved in reference to the uses for which it was adapted."); Benevolent & Protective Order of Elks, Lodge No. 65 v. Lawrence Redevelopment Authority, 33 Mass.App.Ct. 701, 706 (Mass. App. Ct. 1992)("'the imposition of the restriction substantially affected the marketability of the remaining acres., Since compensation for all injury to the portion not taken is required (see G.L. c. 79, § 12), and the restriction here is such an injury, the effect of the restriction upon the value of the remainder is perforce relevant because the BPOE now is prohibited from realizing the value of the highest and best use of the remainder--here, industrial use. The jury thus were properly permitted to consider the diminution in value of the remainder resulting from the restriction.").

101.    Accordingly, a hearing on the amount of damages for "special and peculiar" injury to 209 Charlton Road entails a determination of the fair market value of the highest and best use of the vacant land at 209 Charlton Road, which value cannot be realized due to the stormwater discharge via the prescriptive easement. Wine v. Commonwealth, 301 Mass. at 458;

Benevolent & Protective Order of Elks, Lodge No. 65 v. Lawrence Redevelopment Authority,
33 Mass.App.Ct. at 70; Rodman v. Commonwealth, 86 Mass. App. Ct. 500, 504 (2014).

WHEREFORE, Gentili requests this Court enter the following:

1. An Order setting this proceeding for hearing, upon reasonable notice to the Commonwealth, to determine the damages for "special and peculiar" injury to the land at 209 Charlton Road;

2. Judgment against the Commonwealth in the amount of damages determined upon hearing;

3. Interest and costs as allowed by law; and

4. Such other relief as is just and equitable.

DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(c) of the Federal Rules of Civil Procedure, Gentili requests a trial by jury on the issue of the fair market value of the land known and numbered  as 209 Charlton Road in Sturbridge, Massachusetts.


Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: November 8, 2021

<u>/s/Fulvio Joseph Gentili</u>
Fulvio Joseph Gentili, *Pro Se*
12333 Country Day Cir.
Fort Myers, FL 33913
Telephone Number: 508-935-9967
email:fgentili6665@gmail.com

.

34